IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DR. HORACE HUNTLEY,           }
                              }
        Plaintiff,            }
                              }    CIVIL ACTION NO.
v.                            }    08-AR-2261-S
                              }
THE BOARD OF TRUSTEES OF THE  }
UNIVERSITY OF ALABAMA,        }
                              }
        Defendant.            }

**MEMORANDUM OPINION**

Plaintiff, Dr. Horace Huntley ("Dr. Huntley"), a black male over forty (40) years of age, instituted the above-entitled action alleging various forms of discrimination by his employer, defendant, The Board of Trustees of the University of Alabama ("the Board"). Because of previous rulings, Dr. Huntley's only remaining claim is under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* The court has before it the Board's motion for summary judgment. For the reasons that follow, the Board's motion will be granted.

**FACTS**[1]

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P. In accordance with Rule 56(c), the narrative statement of facts includes facts that are undisputed by the parties. Where there is a dispute, the facts are presented in the light most favorable to Dr. Huntley. "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law.

The submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the relevant facts set forth below.

Dr. Huntley was initially hired by the Board in 1977 as a tenure track assistant professor in the History Department at the University of Alabama at Birmingham ("UAB"). (Doc. 39-1, at 9.) In 1983, Dr. Huntley was denied tenure and, according to the Board, "was given a primary appointment in the Athletic Department as an Academic Advisement Coordinator . . . and a secondary faculty appointment (part-time, non-tenure track) in the History Department as an Assistant Professor." (Doc. 39-1, at 9.) In 1994, under an agreement between the Board and the Birmingham Civil Rights Institute ("BCRI"), the BCRI agreed to pay UAB $20,000 per year in exchange for Dr. Huntley's services in developing its oral history project. (Doc. 36, at 2; Doc. 39, at 6.) Dr. Huntley was paid all of the $20,000 received by UAB from the BCRI, less applicable taxes. (Doc. 39-1, at 8.) Dr. Huntley continued teaching part-time at UAB and was paid by the School of Behavioral and Social Sciences ("the School") for the courses he taught. (Doc. 36, at 2.) At the time UAB and the BCRI entered their contract, Dr. Huntley's salary from the School for his work in the History Department was $15,081. (Doc. 35-3, at 7.) Thus, Dr. Huntley

---

*See* Rule 56(e), F.R. Civ. P.; *see also Celotex,* 477 U.S. at 324. Conclusory allegations or legal conclusions are not enough. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

received a single check which drew funding from two completely separate and unrelated sources. For example, as of 2006, Dr. Huntley was paid $32,841, of which $15,520.66 was paid for his work in the History Department and the remainder was paid from the funds received from the BCRI. (Doc. 35-2, at 86; Doc. 36, at 2.)

Aside from teaching one (1) class per term and keeping two (2) non-mandatory office hours per week, Dr. Huntley has no other responsibilities as a professor. (Doc. 35-1, at 26:8-30:18.) On March 1, 2006, UAB changed Dr. Huntley's classification from "assistant professor" to "credentialed course instructor," explaining that the change was made "to more accurately reflect the fact that from the beginning of his part-time position he never taught more than three courses per year, usually only one or two, and did not participate in other significant department related academic or scholarly activities." (Doc. 39-1, at 10.) At over $15,000, Dr. Huntley was paid nearly three times as much **per course** as any other credentialed course instructor in UAB's History Department. (Doc. 35-3, at 3 ¶¶ 5-10; Doc. 35-3, at  8-13.)

On June 18, 2007, Dr. Huntley wrote to UAB's Provost, Dr. Eli Capilouto ("Dr. Capilouto"), to voice complaints about his salary. Dr. Huntley was concerned that he was being underpaid because, since 1994, he had only received raises based on the portion of his salary paid by the School. (Doc. 35-2, at 82.) Dr. Huntley said he believed that this was due to "an oversight, and that the system

3

was not designed to address such an unusual arrangement." (Doc. 35-2, at 82.)  Dr. Huntley did not suggest a racial motivation or age discrimination as explanations for what he believed to be an inadequate salary.  After several months of negotiating, Drs. Capilouto and Huntley were unable to reach an agreement regarding Dr. Huntley's compensation.

On February 19, 2008, Dr. Huntley filed a complaint with the EEOC alleging that the Board had intentionally discriminated against him with regard to his compensation on the basis of his age and his race. (Doc. 39-1, at 3.)  He filed his complaint in this court on December 3, 2008, alleging that the Board's compensation decisions violated Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and 42 U.S.C. §§ 1981 and 1983.  (Doc. 1, at 1 ¶ 1.)  On December 10, 2008, the Board filed a motion to dismiss Dr. Huntley's claims under the ADEA and §§ 1981 and 1983 as barred by the Eleventh Amendment.  Before the court ruled on said motion, Dr. Huntley filed a motion for leave to amend his complaint to add claims under the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-20, *et seq.* and the Fourteenth Amendment.  (Doc. 12, at 1 ¶ 1.)  On January 21, 2009, the court granted the Board's motion to dismiss the action insofar as based on the ADEA and §§ 1981 and 1983, and denied Dr. Huntley's motion for leave to amend his complaint as futile, leaving Dr. Huntley's Title VII claim as the only remaining claim.  On December 23, 2009

4

the Board filed the instant motion for summary judgment.

**ANALYSIS**

The *McDonnell Douglas/Burdine* burden shifting framework applies to claims of intentional compensation discrimination under Title VII. *See Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992) (applying *McDonnell Douglas* in the gender-based wage discrimination context); *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991) (applying *McDonnell Douglas* in the age-based wage discrimination context). Under this framework, a plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. A plaintiff may do so by adducing evidence that "(1) he belongs to a racial minority; (2) he received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage." *Hill v. Emory Univ.*, 346 F. App'x 390, 395 (11th Cir. 2009) (citing *MacPherson*, 922 F.2d at 774). "[A] 'comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).

Once a plaintiff has made out a *prima facie* case, the burden of going forward shifts to the defendant to articulate, through the introduction of admissible evidence, "some legitimate, nondiscriminatory reason" for its decision. *MacPherson*, 922 F.2d

at 774 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Once the defendant has articulated a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's reason is pretextual.  *Id.*  A plaintiff's burden of showing pretext is significantly higher than both his burden of establishing a *prima facie* case and the defendant's burden of articulating some legitimate, nondiscriminatory reason.  A "plaintiff must establish 'by significantly probative evidence that the proffered reason is a pretext for discrimination.'"  *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989)).

Dr. Huntley has fallen far short of making out a *prima facie* case.  He first proffers other UAB professors as comparators, arguing in his EEOC charge that his salary is "out of compliance with that of other university professors." (Doc. 39-1, at 4.) However, in his brief, Dr. Huntley reverses course and argues that he is not required to identify any similarly situated comparator at all as part of his *prima facie* case.  The Eleventh Circuit has clearly and consistently held that in making out a *prima facie* case of compensation discrimination a plaintiff must show, *inter alia*, "similarly situated comparators outside the protected class received higher compensation," *Hill*, 346 F. App'x at 395 (citing *MacPherson*, 922 F.2d at 774), and that said comparators "'must be

nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.'" *Id.* (quoting *Wilson*, 376 F.3d at 1091). Dr. Huntley's need to skirt this requirement is obvious. He must know that there are no nearly identical white professors to compare himself with.

Dr. Huntley claims, without providing any support, that he has been a "full-time employee just working in two different locations," and therefore attempts to compare his salary with those of full-time professors. Dr. Huntley conflates the fact that he was being paid a "full-time salary" with his meeting the Board's objective criteria for being considered a full-time faculty member. The Board has made clear that it does not classify Dr. Huntley as a full-time faculty member and consequently does not compensate him in the same way that a full-time faculty member would be compensated. (Doc. 35-2, 35:12-36:12; Doc. 39-1, at 8-9.) In fact, Dr. Huntley has not been a full-time faculty member since 1983, when he was denied tenure. The arrangement with the BCRI highlights the fact that Dr. Huntley was not functioning in a full-time capacity. He acknowledges this crucial fact in his June 18, 2007 letter to Dr. Capilouto:

> In 1994 the Birmingham Civil Rights Institute requested my services from UAB for the purpose of establishing its Oral History Project. **A contract between UAB and the Institute was agreed upon that released me half-time to develop the project. Under the agreement I continued to offer one course per term, in the History Department, representing, one-half load.** The History Department has paid half of my salary and the other half has been paid

by UAB.  I have spent the other have of my time at the
Birmingham Civil Rights Institute as Director of the Oral
History Project.  For my services the BCRI agreed to pay
UAB $20,000 anually.  My pay was not altered as a result
of the agreement, and I remained employed, full-time and
paid by UAB.

* * *

Since the inception of this arrangement between UAB and
the BCRI, I have been given raises based on the portion
of my salary from the History Department only.

* * *

**I realize this has been an oversight, and that the system
was not designed to address such an unusual arrangement.**
I am bringing this to your attention so that we may work
out a mutually agreeable remedy.

(Doc. 35-2, at 81-82) (emphasis added).

Additionally, Dr. Huntley admitted in his deposition that he
is not a full-time faculty member:

> Q:    Okay.  So you are a part-time faculty
>       member, correct?
> A:    Well, I am – yes, I guess I am, you could
>       say I am a part-time faculty member.

(Doc. 35-1, at 26:3-7.)  Unlike full-time faculty members Dr.
Huntley does not teach more than one course per term, nor does he
serve on any academic committees.  (Doc. 35-1, at 26:8-30:18.)  Dr.
Huntley admits that aside from teaching his one class per term and
keeping two (2) non-mandatory office hours per week, he has no
other responsibilities as a teacher.  (Doc. 35-1, at 26:8-30:18.)
It is clear, despite his transparent misconceptions, that Dr.
Huntley was not functioning in a full-time faculty capacity while
he was working for the BCRI.

8

The Board is correct in considering Dr. Huntley a "credentialed course instructor" and not a "full-time faculty member." Therefore, it is other credentialed course instructors in UAB's History Department, not full-time faculty members, who could be "similarly situated" to Dr. Huntley with regard to compensation so as to be proper comparators under Title VII. Beginning in 2004, Dr. Huntley's compensation by the School for his work as a credentialed course instructor in the History Department was $15,520.66, well over twice as much per course as any other credentialed course instructor in the History Department. (Doc. 35-3, at 3 ¶¶ 5-10; Doc. 35-3, at 7-13.)

Dr. Huntley's erroneous argument that he is not required to identify any similarly situated comparator could be out of ignorance or a bit of legal legerdemain. Regardless, the short of it is that he cannot identify any "similarly situated comparators outside the protected class [who] received higher compensation," *Hill*, 346 F. App'x at 395 (citing *MacPherson*, 922 F.2d at 774), because they simply do not exist. Therefore, Dr. Huntley's claim fails because he cannot carry his light burden of establishing a *prima facie* case of intentional compensation discrimination.

Assuming *arguendo* that Dr. Huntley has made out a *prima facie* case, which he has not, he offers no proof to rebut the Board's legitimate, nondiscriminatory reason for only giving pay raises on half of his salary. Dr. Huntley's only attempt to tie the Board's

9

decisions to racial animus is by arguing that "no African American are [sic] involved in Dr. Huntley [sic] salary decisions and dr. [sic] Huntley has always been at the mercy of an all white decision making body at UAB concerning his salaries [sic] increases." (Doc. 39, at 7-8.)  Assuming that these assertions are true, they do not prove racial animus or that the Board's rationale for its decision is a pretext.  Dr. Huntley even admits in his June 18, 2007 letter to Dr. Capilouto that he believed his compensation was too low because of "an oversight, and that the system was not designed to address such an unusual arrangement," (Doc. 35-2, at 82) and not because the Board was motivated by racial animus.  The court is not empowered or qualified to substitute its judgment for that of the Board as to how to classify persons in Dr. Huntley's unique dual role.  There is nothing to suggest that the Board's decision to classify Dr. Huntley as a credentialed course instructor and to set his compensation accordingly was in any way based on racial animus.

## CONCLUSION

For the foregoing reasons, the Board's motion for summary judgment on Dr. Huntley's only remaining claim will be granted. A separate order will be entered accordingly.

DONE this 7th day of April, 2010.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE